NO. 07-08-00298-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 28, 2010

JAMES RAY BARROW, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE 242ND DISTRICT COURT OF SWISHER COUNTY;

NO. B4148-0710; HONORABLE EDWARD LEE SELF, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant James Ray Barrow appeals from his jury conviction of the offense of robbery and the resulting sentence of ten years imprisonment in the Institutional Division of the Texas Department of Criminal Justice. Through two issues, appellant contends the evidence is legally and factually insufficient to support his conviction. Finding the evidence sufficient, we affirm the judgment of the trial court.

Background

Appellant was charged by an indictment alleging he committed robbery by intentionally or knowingly threatening or placing his victim in fear of imminent bodily injury or death.[1]  After his not-guilty plea, the State presented its case through four witnesses.  The defense cross-examined each of the State's witnesses and presented two defense witnesses, including appellant.

Evidence showed that at around 10:00 on the night of September 3, 2007, two teenage males visited a convenience store in Tulia, Texas.  They arrived at the store in the driver's pick-up truck and as they parked, appellant, a man in his late thirties, approached the passenger side of the truck, opened the door, and asked for money. Appellant then offered to give the boys a gold pendulum chain in exchange for money. The complainants told appellant they did not have any money.

The driver of the pick-up truck decided to move to another parking space because he was "really scared."  The passenger testified the driver moved "because [they] were scared...[b]ecause someone opened my door I didn't know.  I didn't know if he was going to hurt me or–you know, just opened the door without asking or anything; just opened the door."  As the driver prepared to pull into another space, appellant said, "I'll just get in.  I'll just get in."  Appellant "got on top of [the passenger's] lap…." The

---

[1] *See* Tex. Penal Code Ann. § 26.02(a)(2) (Vernon 2003).

2

passenger testified appellant had his hand in his sweater[2] "and I didn't know if he may have had a weapon, if I was going to get hurt or–I didn't know what was happening, because he jumped in." The driver testified he "was really pretty scared because I didn't want somebody I didn't know in my pickup." The driver also testified he believed "a little bit" that appellant could hurt him.

Appellant then asked the driver and passenger for cigarettes, which they told him they did not have. Appellant asked again for money but the complainants again told them they had none. In response, as appellant opened the door of the truck, he reached over to the console of the truck and took three dollars that were in the cup holder. He got out of the truck and left. The passenger closed the door of the pick-up truck and they left "because we were scared. We didn't want to stay there."

The driver took the passenger to a nearby friend's house. About five to ten minutes after the incident, the passenger complainant observed appellant on the street near the home. He told his friend "that's the guy." His friend identified him as appellant, calling him "Baby James." The passenger then talked to the driver of the pick-up truck and the boys went to the police department. The complainants provided written statements and identified appellant in a line-up.

The defense provided evidence to show appellant did not intend to commit theft but merely asked the complainants if they had any money he could borrow. He also

---

[2] The passenger later testified appellant was wearing "a little hoodie" with "little pockets."

3

testified he offered to sell a necklace to the boys in exchange for ten dollars. He further contended the driver offered him the three dollars.

After hearing the evidence presented, the jury found appellant guilty of robbery and sentenced him to imprisonment for a term of ten years. This appeal followed.

Analysis

Through two issues, appellant challenges the legal and factual sufficiency of the evidence to support his conviction for robbery. He argues that at most he is guilty only of misdemeanor theft.[3]

*Applicable Law*

Reviewing its legal sufficiency, we view the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences therefrom, a rational jury could have found each element of the offense beyond a reasonable doubt. *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App. 2003); *Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim.App. 2001), *citing Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If, given all of the evidence, a rational jury would necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal. *Swearingen,* 101 S.W.3d at 95, *citing Narvaiz v. State,* 840 S.W.2d 415, 423

---

[3] The court's charge to the jury included an instruction on the lesser-included offense of misdemeanor theft.

(Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 975,113 S.Ct. 1422, 122 L.Ed.2d 791 (1993).

A factual sufficiency review of the evidence is "barely distinguishable" from the legal sufficiency review under *Jackson v. Virginia. Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006). A factual sufficiency review considers whether the evidence supporting guilt, though legally sufficient, is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or evidence contrary to the verdict is such that the jury's verdict is against the great weight and preponderance of the evidence. *Id.; Watson v. State*, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). In a factual sufficiency review, we again consider all the evidence, but now in a neutral light. *Marshall*, 210 S.W.3d at 625; *Watson*, 204 S.W.3d at 414. We must also discuss the evidence that, according to the appellant, most undermines the jury's verdict. *Laster v. State,* 275 S.W.3d 512, 518 (Tex.Crim.App. 2009); *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony**.** *Wyatt v. State,* 23 S.W.3d 18, 30 (Tex.Crim.App. 2000) (*citing Barnes v. State,* 876 S.W.2d 316, 321 (Tex.Crim.App. 1994)). Likewise, "reconciliation of conflicts in the evidence is within the exclusive province of the jury**."** *Wyatt,* 23 S.W.3d at 30 *(citing Losada v. State,* 721 S.W.2d 305, 309 (Tex.Crim.App. 1986)). The jury may choose to believe some testimony and disbelieve other testimony**,** *Wyatt,* 23 S.W.3d at 30.

As pertinent here, a person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." Tex. Penal Code Ann. § 29.02(a)(2) (Vernon 2003). A person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of property. Tex. Penal Code Ann. § 31.03 (Vernon 2007). Proving robbery by showing the defendant placed another in fear does not require an actual threat. *Burton v. State,* 230 S.W.3d 846, 852 (Tex.App.–Houston [14th Dist.] 2007, no pet.), *citing Childress v. State,* 917 S.W.2d 489, 494 (Tex.App.–Houston [14th Dist.] 1996, no pet.) ("[t]he fact-finder may conclude that an individual was 'placed in fear' in circumstances where no actual (verbal) threats were conveyed by the accused"). Under the "placed in fear" language in section 29.02 of the Penal Code, the factfinder may conclude that an individual perceived fear or was "placed in fear," in circumstances where no actual threats were conveyed by the accused. *Williams v. State,* 827 S.W.2d 614, 616 (Tex.App.–Houston [1st Dist.] 1992, pet. ref'd).

*Application*

Appellant argues the evidence presented at trial was insufficient to prove he was guilty of robbery because the complainants were not placed in fear and because the State did not prove appellant intended to, or knew his conduct would, place the complainants in fear. We disagree.

6

First, appellant argues the evidence did not show the complainants were placed in fear. However, each complainant here testified they were scared when appellant, a man they did not know, opened the door, asked for money, and jumped into the truck. The passenger testified he was afraid appellant had a gun because his hand was in his pocket.[4] The driver testified similarly. Both complainants testified they were scared of being hurt by appellant. The driver testified he was "really scared" because he "didn't know what [appellant] was going to do, what he had on him, you know. Maybe I felt a little threatened." Appellant was "really, really persistent" about asking for money and was "kind of not going to let us leave." The driver testified the three dollars appellant took out of the cup holder in the console of the truck belonged to him and he did not give appellant permission to take it. The three dollars were never returned to him.

On appeal, appellant refers us to specific testimony he argues supports his contention that the evidence is insufficient to support the complainants were placed in fear:

> Q. (by defense counsel): And isn't it true, [passenger], that [appellant] never made any threat to harm you or [driver]?
>
> A. (by passenger): No, sir.
>
> Q. That's not true, or that is true?

---

[4] At trial, the defense examined a police officer to establish that when the officer saw appellant that night, he was wearing plaid shorts and a "black sleeveless-type undershirt" but was not wearing a hoodie. He further established that the shirt appellant was wearing did not have pockets that the officer saw.

7

| | |
|---|---|
| A. | That is true, that he did not ever...." |

***

| | |
|---|---|
| Q. (by defense counsel) | Now, did [appellant] ever say anything to you or to [passenger] to give you the idea that he would do something to you if you didn't give him any money? |
| A. (by driver) | No, sir. |

***

| | |
|---|---|
| Q. | And did he ever act like he–did he make any overt or any direct acts like he was wanting to hurt either you or [passenger]? |
| A. | No, sir. |
| Q. | Did he say anything like, you know, "Guys, if you don't give me some money, I'm going to take you out in the parking lot and beat the snot out of you"? |
| A. | No, sir. |
| Q. | Did he make any statements of any kind that would–that you would take as a threat? |
| A. | No, sir. |

Appellant further argues that the State's evidence of the driver complainant's emotions, ranging from feeling a "little threatened" to being a "little bit" afraid of imminent bodily injury is not legally sufficient evidence he was placed in fear of robbery. We nevertheless find the jury reasonably could have found, based on the complainant's testimony, the complainants were placed in fear.

Appellant also argues there is no evidence to support the jury's implicit finding appellant intended by his conduct to put the driver complainant in fear of imminent

bodily injury to induce him to part with his money. He testified he took a walk that evening after having an argument with his wife. He acknowledged having the chain necklace in his pocket and approaching the complainants. He said he saw the passenger get out of the truck and asked for money. He stated "I have a nice necklace on me maybe one of you young guys would like to have." He asked for ten dollars in exchange for the necklace, which he said he believed was worth eighty or ninety dollars. The passenger told appellant he did not have any money but took the necklace and asked the driver if he wanted to buy it. The driver told the passenger he had only three dollars. The passenger returned the necklace to appellant. The driver then offered appellant the three dollars he had in the truck. Appellant testified he never threatened the complainants, never intended to take anything from them, and never got into the pick-up. He also testified he thanked the boys for the money when he saw them at a nearby house. He crossed the street and waved "hello" to them and the passenger's friend said hello, referring to appellant as "Baby James."

In making his argument that he did not intentionally or knowingly act in a way to place the complainants in fear, appellant also points to the driver complainant's testimony agreeing that no harm was done to either complainant, no aggressive movements were made by appellant to them, and appellant gave them no "mean looks." During redirect, however, the driver agreed with the prosecutor that opening the truck door uninvited and jumping in on the passenger's lap were aggressive movements.

As noted, the jury was free to believe the complainants' version of the events rather than appellant's. *Wyatt,* 23 S.W.3d at 30*; Chambers,* 805 S.W.2d at 461. From

9

the testimony the jury heard, we conclude the jury could have inferred from appellant's conduct that he intended to, or knew his conduct would, place the complainants in fear. *See Hernandez v. State,* 819 S.W.2d 806, 810 (Tex.Crim.App. 1991); *Beltran v. State*, 593 S.W.2d 688, 689 (Tex.Crim.App. 1980); *Dominguez v. State,* 125 S.W.3d 755, 761 (Tex.App.—Houston [1st Dist.] 2003, pet. ref'd) (a jury may infer intent from any facts that tend to prove its existence, such as the acts, words, and conduct of the defendant).

Viewing the evidence in the light most favorable to the verdict, we find the evidence is legally sufficient to establish appellant intentionally or knowingly acted in such a way to place the complainants in fear. The evidence is likewise legally sufficient to show the complainants were placed in fear. Viewing all the evidence in a neutral light, we conclude the proof of appellant's guilt is also neither so obviously weak as to undermine confidence in the jury's determination, nor such that it is greatly outweighed by contrary proof. The evidence is factually sufficient.

We overrule appellant's issues and affirm the trial court's judgment.


James T. Campbell
Justice


Do not publish.